# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ELLEN KLEINER, *et al.* | : | CIVIL ACTION |
|---|---|---|
| v. | : | NO. 19-1700 |
| RITE AID CORPORATION, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**  **June 11, 2019**

We today explore whether we may exercise our limited jurisdiction when a manufacturer removes a state court product liability claim because it may sue a non-party bankrupt debtor supplier for indemnity at some undefined point. The manufacturer removed here in April 2019 after years of state court progress towards a January 2020 trial arguing the case is now related to a bankruptcy court proceeding filed in February 2019. Our limited subject matter jurisdiction typically does not include product liability claims filed by Pennsylvanians seeking recovery for injuries entirely under Pennsylvania state law against at least some Pennsylvania companies. But what happens when one of the defendants in the products liability case in state court hopes to recover some or all its potential losses in the products liability case from a non-party then reorganizing in the bankruptcy court. The bankruptcy automatic stay does not apply as the products liability case does not include a bankrupt debtor. After analyzing the defendant manufacturer's possible indemnity rights against the non-party debtor, we find the ongoing products liability case is not "related to" the non-party supplier's pending bankruptcy. We lack subject matter jurisdiction. We grant the state court plaintiff's motion to remand.

I. **Background**

Ellen Kleiner alleges Johnson & Johnson's Baby Powder product caused her advanced stage ovarian cancer diagnosed in 2011. She and her husband, Yuri Kleiner, sued Rite Aid Corporation, Rite Aid of Pennsylvania, Inc., Johnson & Johnson, Johnson & Johnson Consumer Companies, Inc.,[1] Imerys Talc America, Inc. f/k/a Luzenac America, Inc., and Personal Care Products Council f/k/a Cosmetic, Toiletry, and Fragrance Association.[2] They initially sued in the Pennsylvania Court of Common Pleas alleging all defendants "knew or should have known that the use of talcum powder based products in the perineal area significantly increases the risk of ovarian cancer based upon scientific knowledge dating back to the 1960s."[3] The Kleiners allege a variety of state law causes of action.[4]

The Kleiners narrowed their defendants through discovery. The parties dismissed by stipulation Personal Care Products Council f/k/a Cosmetic, Toiletry, and Fragrance Association.[5] The Kleiners voluntarily dismissed Imerys on February 4, 2019 without prejudice to filing claims against Imerys in multidistrict litigation.[6] Nine days later, Imerys Talc America, Inc. and two affiliates[7] filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the District of Delaware.[8] The parties then proceeded in state court for several months while Imerys addressed its reorganization. The Kleiners and the remaining defendants are set for a projected trial date of January 6, 2020 in state court.[9]

While Imerys is not a party to this case, our focus today very much remains on Imerys, which supplied Johnson & Johnson's talc under various agreements. Johnson & Johnson claims this case will have a substantial impact on Imerys' estate in bankruptcy. Emphasizing its business and legal ties with Imerys, Johnson & Johnson moved in the United States District Court for the District of Delaware (the District of Imerys' bankruptcy proceeding) to fix venue there for the

thousands of cases challenging Johnson & Johnson's use of Imerys-supplied talc. Johnson & Johnson's venue motion has just recently become ripe for review by Judge Noreika in the District of Delaware.[10]

After over two months of litigating in state court while Imerys addressed its reorganization in bankruptcy court and shortly after moving to transfer venue of thousands of cases before Judge Noreika in the hope of creating a de facto multi-district litigation, Johnson & Johnson removed the Kleiners' case to our court invoking our limited subject matter jurisdiction over "civil proceedings . . . *related to* cases under" the Bankruptcy Code.[11]

Johnson & Johnson hopes to remain here (and then presumably move to transfer venue to the District of Delaware) by directing us to agreements with Imerys or its predecessor entities. These agreements contain indemnification language which Johnson & Johnson claims affords us a basis for subject matter jurisdiction. For example, Johnson & Johnson cites a 1989 agreement which provides:

> Seller shall indemnify, defend and hold harmless [Johnson & Johnson], and its affiliates, and each of their respective directors, officers, employees, and agents from and against all liabilities arising out of any violation by Seller of any law, ordinance, regulation or rule or the order of any court or administrative agency, and from and against all liabilities arising out of any claim by an employee, agent, or contractor of Seller arising in connection with this Agreement; provided, however, that Seller shall not indemnify [Johnson & Johnson] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [Johnson & Johnson]; or (ii) the acts or omissions of Seller which were directed by [Johnson & Johnson]. The provisions of this [section] shall survive the termination or expiration of this Agreement.[12]

Johnson & Johnson's 2001 agreement with Imerys' predecessor contains a similar indemnification provision:

> Seller shall indemnify, defend and hold harmless [Johnson & Johnson] and its Affiliates, and each of their respective officers, directors, agents and employees from and against all liabilities arising out of any violation by Seller of any law, ordinance, regulation or rule or the order of any court or administrative agency, and from and against all liabilities arising out of any claim by an employee, agent, or contractor of Seller arising in connection with

3

this Agreement, *provided however,* that Seller shall not indemnify [Johnson & Johnson] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [Johnson & Johnson]; or (ii) the acts or omissions of Seller which were directed by [Johnson & Johnson].[13]

Johnson & Johnson also directs us to Imerys' June 23, 2015 "Indemnification Demand Notice for Ovarian Cancer Lawsuits," in which Imerys demands "indemnification pursuant to various talc supply and material purchase agreements with [Johnson & Johnson] (the "Agreements"), as well as by operation of law."[14] Johnson & Johnson does not allege what, if any, response it tendered to Imerys' demand, nor can we locate a response in the lengthy record.

Johnson & Johnson also describes shared insurance with Imerys, potentially limiting the pool of funds available to Imerys in bankruptcy based on John H. Denton, Johnson & Johnson's Director of Corporate Risk Management, swearing Imerys "tendered the Talc Claims to certain of [Johnson & Johnson's] insurers."[15]

## II. Analysis

The Kleiners move to remand this long pending Pennsylvania products liability case to the Court of Common Pleas. They contend we lack subject matter jurisdiction because this civil action will not affect the Imerys bankruptcy. They alternatively contend even if Johnson & Johnson can demonstrate a plausible effect on the non-party's bankruptcy, we should exercise our discretion to remand the case. We agree with the Kleiners and remand.

### A. We may exercise original jurisdiction over a civil proceeding related to a bankruptcy case.

As part of our limited subject matter urisdiciotn, Congress vests federal district courts with "original and exclusive jurisdiction of all cases under title 11," the Bankruptcy Code.[16] We also enjoy "original but not exclusive jurisdiction of all civil proceedings . . . *related to* cases under title 11."[17] While not "limitless," this "'related to' language . . . must be read to give district courts

4

(and bankruptcy courts under [28 U.S.C.] § 157(a))[18] jurisdiction over more than simple proceedings involving the property of the debtor or the estate."[19] Congress enacted this jurisdictional grant to provide "comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[20]

A party in state court "may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."[21] But Congress, equally mindful of important the federalism interest, vested district courts with broad discretion to "remand such claim or cause of action on any equitable ground."[22] The statute also says, "nothing in this section prevents a district court in the interest of justice, *or in the interest of comity with State courts or respect for State law*, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[23] This deference is known as permissive abstention. Congress also delineated circumstances under which we must abstain—i.e., mandatory abstention. "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, *the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction*."[24]

As the removing party, Johnson & Johnson carries the burden of demonstrating federal subject matter jurisdiction over these exclusively state law claims between non-diverse parties.[25] Johnson & Johnson argues the case is related to the Imerys bankruptcy because "[f]irst, through a series of supply agreements, certain contractual rights and obligations between the Debtors and

5

[Johnson & Johnson] arose upon the filing of the Complaint asserting the State Court Talc Claims"; "[s]econd, the Debtors have demanded coverage under certain insurance policies available to [Johnson & Johnson]"; and third, "each bottle of [Johnson & Johnson] cosmetic talcum powder purchased by the Plaintiffs contained the Debtors' talc," giving rise to "an identity of interest between the Debtors and [Johnson & Johnson] such that the State Court Talc Claims are, in essence, claims against the Debtors."[26]

The Kleiners argue we lack subject matter jurisdiction because their products liability case is not related to the Imerys bankruptcy. The Kleiners alternatively argue even if we find this litigation related to the Imerys bankruptcy, we should abstain from exercising jurisdiction over this case presenting solely claims under Pennsylvania. We agree and remand this case to the Pennsylvania Court of Common Pleas.

### B. Possible indemnification is not a basis for our jurisdiction because Johnson & Johnson and Imerys have not agreed to automatic indemnification.

Removing parties frequently claim indemnification agreements with a debtor in bankruptcy provide a basis for jurisdiction. Johnson & Johnson, however, fails to demonstrate the Kleiners' lawsuit triggered Imerys' duty to automatically indemnify. "Only when the right to indemnification is clearly established and has accrued upon the filing of a civil action is the proceeding deemed 'related to' the bankruptcy case."[27] By contrast, "where the right to indemnification is contingent on a factual finding in an action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankruptcy estate and thus no "related to" jurisdiction."[28]

The foundational case in this Circuit is *Pacor, Inc. v. Higgins*.[29] Pacor supplied asbestos to John Higgins' employer. Mr. and Mrs. Higgins sued Pacor in Pennsylvania state court for "damages allegedly caused by Mr. Higgins' work-related exposure to asbestos supplied by

6

Pacor."³⁰ Pacor then "filed a third party complaint impleading the Johns-Manville Corporation, which Pacor claim[ed] was the original manufacturer of the asbestos."³¹ After Johns-Manville filed a chapter 11 petition in New York, the Pennsylvania state court severed Pacor's third party action against Johns-Manville.³² As the state court case against Pacor neared trial, Pacor removed the state court case to the United States Bankruptcy Court for the Eastern District of Pennsylvania and moved for transfer of the action to the New York bankruptcy court then managing Johns-Manville's bankruptcy claiming related to jurisdiction.³³

The district court found "the original suit by Higgins against Pacor was not 'related to' the Manville bankruptcy proceedings" and remanded it to state court.³⁴ But the district court found "the Pacor-Manville third party claim was a proceeding 'related to' bankruptcy, and it remanded that portion of the action to the bankruptcy court for consideration of the transfer of venue motion made by Pacor."³⁵

Our Court of Appeals affirmed the district court's order "remanding the Higgins-Pacor action to state court."³⁶ Our Court of Appeals held "the proceeding need not necessarily be against the debtor or against the debtor's property" to supply related to jurisdiction.³⁷ But the actions must share more than "mere . . . common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate."³⁸ "[T]he test for determining whether a civil proceeding is related to bankruptcy," our Court of Appeals held, "is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*"³⁹ If the outcome of the lawsuit between third parties "alter[s] the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impacts upon the handling and administration of the bankrupt estate," related to jurisdiction is established."⁴⁰

Applying this standard, our Court of Appeals in *Pacor* found "the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate" because "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville."[41] Our Court of Appeals found relevant the fact "there would be no automatic creation of liability against Manville on account of a judgment against Pacor," as "Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate."[42]

Applying this framework to Johnson & Johnson's agreements with Imerys, Judge Schwab recently granted the plaintiff's motion to remand similar product liability claims to Pennsylvania state court over Johnson & Johnson's opposition. Judge Schwab found Johnson & Johnson failed to demonstrate the sort of automatic indemnity owed by Imerys to Johnson & Johnson necessary for related to jurisdiction:

> Until Plaintiff actually has a claim against Imerys, the instant case is not related to the Imerys' bankruptcy proceedings. Like *Pacor,* this matter in controversy here does not lead this Court to conclude that the outcome of the instant matter would have an effect on the Imerys bankruptcy estate. The Court finds that the arguments raised by Defendant Johnson & Johnson, in its Notice of Removal and in its Memorandum of law in opposition to Plaintiffs' Motion for Remand, exhibit Defendant's potential third-party claim against Imerys. The outcome of the instant case will not bind Imerys or its affiliates, and because Imerys is not a party here, therefore, *res judicata* and collateral estoppel will not apply to bind Imerys.[43]

After careful review, we agree with Judge Schwab's analysis. Johnson & Johnson emphasizes the initial sentences of the indemnification clauses providing for indemnification. But it fails to account for the glaring qualifications of those obligations. In the 1989 Agreement Johnson & Johnson and Imerys agreed, "Seller shall not indemnify [Johnson & Johnson] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [Johnson & Johnson]; or (ii) the acts or omissions of Seller which were directed by [Johnson & Johnson]."

8

The 2001 Agreement contains a nearly identical qualification: "Seller shall not indemnify [Johnson & Johnson] for any such liabilities to the extent that such liabilities arise from: (i) the acts or omissions of [Johnson & Johnson]; or (ii) the acts or omissions of Seller which were directed by [Johnson & Johnson]."

This qualified language does not evince the parties' intent to extend automatic indemnity where Johnson & Johnson's own acts or omissions are the subject of litigation. Of course, Johnson & Johnson way prove it is entitled to indemnification. But its claim can only be vindicated through a second lawsuit. Unlike *Pacor* which would counsel us to retain the indemnity claim, Johnson & Johnson never sued Imerys in this case.

### C. The limited record on shared insurance is insufficient to find jurisdiction.

Johnson & Johnson also argues its shared insurance with Imerys will deplete available funds that could otherwise be paid to Imerys. We have a limited fact record on this issue. While Johnson & Johnson appended the parties' key supply agreements relating to indemnification, they did not include their allegedly shared insurance policies.

In *In re Combustion Engineering, Inc.*,[44] our Court of Appeals considered a claim of related to jurisdiction premised in part upon allegedly shared insurance. Our Court of Appeals found the record insufficient to resolve the issue. "Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor."[45] We, like our Court of Appeals in *In re Combustion Engineering, Inc.*, lack a sufficiently developed record of the relevant policies. And we decline to rest subject matter jurisdiction solely upon counsel's or a corporate representative's say-so.[46] But

9

because, as we explain below, abstention is warranted even if we find jurisdiction, we need not order discovery on this issue.⁴⁷

### D. We exercise our discretion to remand this case to Pennsylvania state court.

The Kleiners argue even if we find Johnson & Johnson established a sufficient relation to Imerys' bankruptcy, we should exercise our discretion to remand the case to state court. We agree remand is appropriate.

Congress vested federal district courts with the discretion, when "in the interest of justice, *or in the interest of comity with State courts or respect for State law*, [to] abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."⁴⁸ Courts in our Circuit apply a host of factors when considering a party's motion to remand under this provision, including:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-Bankruptcy Court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the Bankruptcy Court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in Bankruptcy Court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.⁴⁹

Applying these factors counsels in favor of remand. The Kleiners allege exclusively Pennsylvania state law claims. Pennsylvania courts are best situated to hear the personal injury claims of its citizens. Johnson & Johnson has not demonstrated an unsettled area of law requiring our intervention (nor why, even if such an area of state law were unsettled, we would be best suited to resolve it). Discovery has almost concluded, and this case is long-scheduled for trial on January 6, 2020.⁵⁰ There is little obvious burden to the state court's docket. Johnson & Johnson has

10

candidly described its strategy of centralizing these cases in the District of Delaware. To the extent such a strategy circumvents the rules and processes governing Multi-District Litigation is a question best resolved, if at all, by Judge Noreika in the first instance.

## III. Conclusion

Johnson & Johnson has not shown our "related-to" jurisdiction over the Kleiners' long pending products liability case set for trial in January 2020. Possible indemnity is not automatic indemnity like a capped insurance policy setting a definite obligation without further litigation. Even if we would find indemnity, we still remand under our Court of Appeals' guidance as to the exercise of our discretion. We grant the Kleiners' motion to remand in the accompanying Order.

---

[1] We refer to Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. collectively as "Johnson & Johnson."

[2] ECF Doc. No. 1-3 at 2 of 60.

[3] *Id.* at 12 of 60, ¶ 45.

[4] The Kleiners allege:

| | |
|---|---|
| Count I: | "Strict Liability Failure to Adequately Warn" against Imerys Talc; |
| Count II: | "Strict Liability Failure to Adequately Warn" against Johnson & Johnson; |
| Count III: | "Strict Liability Failure to Adequately Warn" against Rite Aid; |
| Count IV: | "Strict Liability Design Defect and Manufacturing Defect" against Imerys Talc; |
| Count V: | "Strict Liability Design Defect and Manufacturing Defect" against Johnson & Johnson |
| Count VI: | "Strict Liability Design Defect and Manufacturing Defect" against Rite Aid; |
| Count VII: | "Negligence" against Imerys Talc; |
| Count VIII: | "Negligence" against Johnson & Johnson; |
| Count IX: | "Negligence" against Rite Aid; |
| Count X: | "Intentional Infliction of Emotional Distress" against Johnson & Johnson; |
| Count XI: | "Negligent Infliction of Emotional Distress" against Johnson & Johnson; |

| | | |
|---|---|---|
| Count XII: | "Violation of Pennsylvania's Consumer Protection Act" against Rite Aid; | |
| Count XIII: | "Violation of Pennsylvania's Consumer Protection Act" against Johnson & Johnson | |
| Count XIV: | "Common Law Fraud" against Johnson & Johnson | |
| Count XV: | "Breach of Express Warranty" against Johnson & Johnson | |
| Count XVI: | "Breach of Implied Warranties" against Johnson & Johnson | |
| Count XVII: | "Punitive Damages" against Imerys Talc | |
| Count XVIII: | "Punitive Damages" against Johnson & Johnson | |
| Count XIX: | "Loss of Consortium" against all Defendants. | |

[5] ECF Doc. No. 1 at ¶ 4 n.1.

[6] ECF Doc. No. 1-2 at 2 of 3.

[7] The two affiliates are Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc.

[8] ECF Doc. No. 1 at ¶ 1.

[9] ECF Doc. No. 1-11 at 2 of 47.

[10] *In re Imerys Talc Am., Inc.*, No. 19-10289, 2019 WL 2052351, at *2 (D. Del. May 9, 2019) ("Briefing on the underlying Venue Motion is underway pursuant to an agreed-upon schedule and will be completed by May 23, 2019." (internal citation omitted)).

[11] 28 U.S.C.A. § 1334(b) (emphasis added).

[12] ECF Doc. No. 1-6 at 5–6.

[13] ECF Doc. No. 1-7 at 8 of 8.

[14] ECF Doc. No. 1-10 at 5 of 100.

[15] ECF Doc. No. 1-5 at 335, ¶ 16.

[16] 28 U.S.C. § 1334(a).

[17] 28 U.S.C.A. § 1334(b) (emphasis added).

[18] 28 U.S.C. § 157(a) provides "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

[19] *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (footnote added).

[20] *Id.* (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[21] 28 U.S.C.A. § 1452(a).

[22] 28 U.S.C.A. § 1452(b).

[23] 28 U.S.C. § 1334(c)(1) (emphasis added).

[24] 28 U.S.C. § 1334(c)(2) (emphasis added).

[25] *See The CIT Grp./Equip. Fin., Inc. v. BDO Seidman, LLP*, No. 09-431, 2009 WL 2171231, at *2 (W.D. Pa. July 21, 2009) ("The removing party, in this case BDO, bears the burden of proving that removal was proper based on 'related to' jurisdiction."); *Danner v. Tower Acquisition, LLC*, No. 06-2270, 2007 WL 914172, at *4 (M.D. Pa. Mar. 23, 2007) ("As with removal under 28 U.S.C. § 1441(a) for a diversity case, Defendant, as the removing party, has the burden of establishing bankruptcy jurisdiction."); *see also* ECF Doc. No. 1-3 at ¶ 7 ("Defendant Rite Aid of Pennsylvania, Inc. is an active Pennsylvania corporation with its principal place of business in Pennsylvania at the above-captioned address which, at all material times, regularly conducted business in Philadelphia county.").

[26] ECF Doc. No. 1 at ¶ 20 (emphasis omitted).

[27] *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014).

[28] *Id.*

[29] 743 F.2d 984 (3d Cir. 1984).

[30] *Id.* at 986.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 987.

[36] *Id.* at 996.

[37] *Id.* at 994.

[38] *Id.*

[39] *Id.*

[40] *Id.*

⁴¹ *Id.* at 995.

⁴² *Id.*

⁴³ *Kaufman v. Johnson & Johnson Consumer, Inc.*, No. 19-0520, 2019 WL 2297556, at *3 (W.D. Pa. May 30, 2019) (internal citation omitted).

⁴⁴ 391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005).

⁴⁵ *Id.* at 232–33.

⁴⁶ *Id.* at 233 ("Although the Plan proponents assured us at oral argument that '[t]he shared insurance has one cap and that all insureds are under the same cap,' we cannot rest the exercise of subject matter jurisdiction on this assertion alone.").

⁴⁷ *Id.* ("Because there are insufficient findings of fact on the current record to assess the matter, we would ordinarily remand on the shared insurance issue. However, because we conclude § 105(a) does not permit the extension of a channeling injunction to the non-derivative claims against non-debtors Basic and Lummus, no further fact finding is required on this point.").

⁴⁸ 28 U.S.C. § 1334(c)(1) (emphasis added).

⁴⁹ *In re D'Angelo*, 491 B.R. 395, 406 (E.D. Pa. 2013).

⁵⁰ ECF Doc. No. 1-11 at 2 of 47.